We're going to move now to appeal 25-1302 United States v. Tommie Haney. Mr. Ellis, we'll recognize you again. May it please the court, Mr. Anderson. I hope the court has not got a room tired of hearing about ye, since it's an issue here again. So let's lead with that. Well, I've got a different question about it this time, so go ahead. Well, Judge, my precatory comments are simply that, again, the defense is not limited to the exact arguments made below. Once the claim has been preserved as it was below here, that we can advance the argument that we're advancing on the appeal. So with that, I'll happily listen to your question. So my question has to do with this, I guess it seems to me, somewhat creative suggestion of secondary transfer, if I got the phrase correct, to explain the defendant's DNA on the gun in question. That seems to me like an eminently factual sort of question, the kind that if it had been raised in the district court, there would be an opportunity for some kind of testimony about that by somebody who knows from doing these kinds of tests and studies how probable. Is that, that seems to me quite different from saying we've got a variation on our legal argument. I don't know that it is very different. I recognize that it's more complex, but it's nevertheless, the contention below was that the two level gun enhancement shouldn't be applied. It was implicable. They made an argument that didn't specifically address the DNA, but it's the government's burden. And the government's report just suggests that there was contact, right, as opposed to possession. We're no longer in the language of the condition that allows for the enhancement to be imposed. Secondary transfer is a well recognized thing among forensics, and this court has discussed it in its opinions as well. If the government wanted to latch on to this notion that there had to be this sort of proof through the possibility of secondary transfer or direct contact with the firearm that my client possessed the weapon, they had notice to do that. They had the burden. They can come in not just with a report that refers to the presence of DNA, but with an expert who would explain why it is that this is not secondary transfer. That's an absence that is because of the government's efforts for establishment of proof. We have other cases where we would not be arguing this enhancement. Were this gun found in my client's residence among drug paraphernalia, et cetera, that wouldn't be something that we're advancing on this appeal. You probably have received an Andrews brief in this case. There's other evidence that the government could submit. It could have had additional testimony through the individual who did possess the gun, Mr. Lewis. It could have done other things to try to ascertain that it's the specific weapon that is referred to, the firearm, because of the number of nine millimeter Taurus firearms. By the way, you cannot draw a line between my client and a side business of selling firearms to say, with Mr. Lewis having a nine millimeter, that must be the one that he had sold and provided to Mr. Lewis because there's just no indication that Mr. Lewis may have owned that firearm long before Mr. Haney ever came into the conspiracy. A couple of questions, Mr. Lewis, if I could. If we were to find that the inference of possession here is reasonable, what evidence is there to rebut the inference of connection to the drug case? As I understand it, that would be your burden, right? Well, I would phrase it differently. I'd say that you have to, as the government, come in as the party with the burden of proof to show that it was part of this conspiracy the firearm was possessed or that it was part of the relevant conduct. What the government has been able to do is show that my client possessed firearms, but the PSR shows that my client was separately selling firearms. They didn't ever establish that it was part of this conspiracy or part of the umbrella relevant conduct. So I think that's the problem, Judge Hamilton, is that we're not in the position of trying to say that this was in fact a hunting rifle or some of these things that we see come up. It would have been better for the government to have stronger proof than it offered here. It's asking inference to be stacked upon inference. Second question will not surprise you. We've got a defendant here whose criminal history is 6, offense level 43, far bottom right corner of the sentencing table. She gets sentenced to 168 months. A two-level guideline adjustment doesn't seem all that big a deal under the circumstances, but was there any indication in the district court that this did not matter to the ultimate sentence? No, I don't think the district court would have missed the opportunity to say that this wouldn't affect my decision one way or another. I have every opportunity to say that. Melina Martinez tells us the importance of correctly calculating the guideline range first. And also, if there's any possibility that my client clicks down two levels and presents a better defense case in terms of leniency to the district court, we'd want that consideration. And furthermore, if we were to go back now, it's not just a question of the two levels, but we have any pepper arguments that we could make if my client's been staying out of trouble in prison, rehabilitating himself, and demonstrating that he's a better person today than he was at the time of the original sentencing. With that, I reserve the balance of my time. Thank you, Mr. Hillis. The remainder of your time will be reserved for rebuttal. Mr. Anderson, we'll move to you now for oral argument on behalf of the appellee. Thank you, Your Honor. May it please the court, I'm Steven Anderson, and I represent the government. This court should affirm because the district court did not clearly err when it applied the two-level enhancement for possession of a dangerous weapon. On the primary issue, possession, the evidence supports a finding that Tommy Haney both actually and constructively possessed the Taurus 9mm handgun during the offensive conviction. First, his DNA is located on the firearm. This supports the conclusion that at some point during the conspiracy, Haney actually possessed the weapon. Under the preponderance standards, the DNA evidence is enough. Additionally, the firearm was found in the residence of his co-conspirator, Lewis, a residence that he frequented. He was the leader of a conspiracy along with Lewis, regularly involved in the day-to-day operations and activities of this group, and the charged conspiracy ran almost two years from August 26, 2021 to June 28, 2023. But what evidence was presented as to conversations between Lewis and Haney regarding firearms? And did those conversations ever establish that Lewis was the source of firearms for the gun sales that Haney was pursuing? Your Honor, there were conversations between Mr. Haney and Mr. Lewis regarding gun sales. Mr. Haney asked Lewis what type of weapons he had, and in response, Lewis said that he had a Taurus G2C and a Rusty Smith & Wesson 40, and Mr. Haney relayed some of that information in subsequent conversations with others. And in the messages that Mr. Haney communicated with drug customers and others about selling firearms, he talked about both how his people and how he himself had firearms for sale. And in some of those, he referenced a Taurus, the same make found with his DNA on it in Mr. Lewis's house. Well, that, you know, gosh, there are a lot of Tauruses out there. I know that they discussed firearms, but I'm not so certain as you are that those conversations established that it's Lewis who was the source. Mr. Lewis, it appears, certainly had firearms as well, Your Honor. But from the conversations that Mr. Haney had with others, he did use his own possession. I have. So under the preponderance standard, I think it's more likely than not that Mr. Haney possessed the Taurus firearm that he was offering for sale, was the one found at Mr. Lewis's residence with his DNA on it. Regarding Mr. Haney arguing on appeal that the DNA could be from secondary transfer, which was discussed a little bit, the government does believe that he waived that argument. This is not a new legal argument, but an addition of facts and really speculation. There's no evidence in the record that supports secondary transfer. Possession wasn't even really challenged at the district court level. It was the connection to drug trafficking. The government and the district court had no ability to address these new claims below. Haney's trying to construct a new argument on appeal that should have been made at the district court. Regarding the connection, Haney failed to show that it was clearly improbable that the Taurus handgun was connected to the drug offense. The weapon was found in close proximity to drugs in the residence. The residence was frequented by Haney in connection to his drug trafficking business with Lewis. The residence itself was used to facilitate drug trafficking. Drug deals occurred there. Conspirators traveled there before and after deals. Drugs were stored there. And regarding the potential of a gun business unrelated to drug trafficking, it would be the defendant's burden to rebut that after the burden shifted after possession. And in his reply brief, Mr. Haney said he did not take issue with the district court's finding that Haney had not shown it was clearly improbable that the firearm was connected to drug trafficking. Do you think the district judge adopted a theory of actual possession or constructive possession? Your Honor, I believe the evidence supports both. I know. With the judge, with his language, it would appear likely actual with the reference to his DNA being on it and it being referenced in the conversations. But I do think that the evidence shows, supports a finding of both actual and constructive as well as the... Well, I think we probably would need to stick with the district judge's actual theory, though, rather than say to affirm on a basis other than that the district court adopted based on factual findings. The court can find, or this court can uphold a sentence adjustment on any grounds found in the record regardless of the rationale used by the district judge. That would require us to do our own fact finding. Well, the facts are already in the record. And draw an inference. It's a finding of fact that the defendant possessed the firearm, correct? Yes. And that would be either actual or constructive. I understand you think you've got evidence of both. But I'm trying to understand the basis for the district court's finding. Your Honor, I think the district court, with their language, likely saw it as actual. It's not entirely clear. Correct. What do you make, and I'm sorry, Mr. Hillis, I forgot to ask you about this, but the district judge's comment on page four of the transcript, this objection that is about the firearm is essentially meaningless since the defendant only received a two-point enhancement for possession of a firearm. Its relationship to the drug offense for which he pled guilty has no bearing on the guideline calculation. Your Honor, the court's statement may be an artful, but I don't think it misstates the law that there need not be a connection between the weapon and the offense of conviction if the weapon is possessed during relevant conduct. Well, I'm interpreting that to say the guidelines are still life even if you take the two levels off. Your Honor, the district court judge did note prior to his discussion about the firearm enhancement that he stated, in fact, none of the objections really have any impact on the sentence, which is going to be governed by the 3553A factors, since I'm not substantially relying on what will be objections or not a very high range that even the government isn't advocating for in this case. That's the paintee's appendix for page four. But as the court noted with prior counsel, there was not a specific finding that absent a guideline, he would have imposed the same sentence. So for that reason, the government did not raise harmless error. I'm sorry, why didn't you raise harmless error? The district court didn't make a specific claim about this enhancement, stating that it would have sentenced Mr. Haney to the same sentence, regardless of the application of the enhancement for that reason. Unless there are any further questions, the United States has the court to affirm the district court's application of the enhancement. Thank you, Mr. Anderson. Mr. Hillis will recognize you now for rebuttal argument. So there's no harmless error contention. I won't address that. There's no constructive possession, reasonable foreseeability under Rosemont. I won't address that. What we do have is the government's case basically coming down to a discussion about a Taurus firearm and then DNA being found on a Taurus firearm. But the government's own words, as it stood up here a moment ago at the podium, said that Mr. Lewis, in his conversations with Mr. Haney, Mr. Lewis said he already has a Taurus firearm. So how are we to decide that this later discussion about a Taurus firearm is in fact one that Mr. Haney provided Mr. Lewis, who already provided a Taurus firearm? I don't know how many Taurus firearms Mr. Lewis wanted to possess, but he already possessed one. So we can't say that this conversation about a gun here resulted in possession of a gun later on by Mr. Lewis. Mr. Lewis, then the presence of the firearm in his possession, in his residence, not my client's. My client's never seen with a firearm. My client has a separate business dealing firearms. It's not a part of this conspiracy. It's not a part of the relevant conduct. So it comes really down to the DNA being critically important here. But I asked this court to take judicial notice of its own case law about secondary transfer. And if these two gentlemen are in business together selling drugs, and they're handling product together, and they handle the money together, and the bags that these things go in, and my client's over to Mr. Lewis's residence periodically and often, he is shedding DNA through all of these contacts. And it cannot be overlooked that the likelihood of DNA through secondary transfer is enormous. And it does not tilt the scale meaningfully for the government whose burden it was to establish actual possession. If I am in the clerk's office signing in in the morning for the day's arguments, and then a member of the panel were to handle the sign-in sheet and then touch your wallet, I wouldn't think you would presume that I had, in the course of the day, accessed your wallet or purse or anything like that. The secondary transfer accounts for this. The government needs better evidence if it's going to rely on the DNA so that it meets its burden of showing why the presence of the DNA is one part of this or even the sufficient part of this to show actual possession. It has nothing other than this conversation, which we've accounted for. Mr. Lewis already has the Taurus. And it pins its hopes largely on the presence of DNA when the science shows secondary transfer is a common feature. This is not something that we're being very creative on. We're asking the court to recognize science. And so having failed to meet its burden and not shown that this was harmless error, we think that this case, not to say too little of the anchoring effect anyway in Molina's Martinez, the importance of correctly calculated guideline, should go back for remand, taking off the two-level enhancement. With that, I have nothing further. Thank you, Mr. Ellis. Thank you, Mr. Anderson. The case would take an advisement. That will close our oral arguments for today.